IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * Criminal No. PX-19-0158 |
| OWEN NESMITH | * |
|  | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION TO SUPPRESS TANGIBLE EVIDENCE

Owen Nesmith, by and through his undersigned counsel, James Wyda, Federal Public Defender for the District of Maryland, and David Walsh-Little and Douglas Miller, Assistant Federal Public Defenders, hereby moves this Honorable Court to suppress all evidence seized during the execution of a search and seizure warrant at Owen Nesmith's home located at 5604 McCormick Avenue, in Baltimore, Maryland.

## INTRODUCTION

Owen Nesmith is charged in a multi-defendant indictment with crimes that allegedly occurred at the Maryland Correctional Institution-Jessup (hereinafter "MCI-J"), a prison where Mr. Nesmith was previously employed. Specifically, Mr. Nesmith is charged in Count One with Racketeering in violation of 18 U.S.C. § 1962(c), in Counts Eight, Nine, and Ten with Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242, and in Count Eleven with making False Statements in violation of 18 U.S.C. § 1001(a)(2).

Evidence was seized from Mr. Nesmith's home pursuant to a search and seizure warrant. The information included in the affidavit offered in support of this warrant was stale and did not form a sufficient nexus to the searched property. As such, it did not support a finding of probable cause. The supporting affidavit was so lacking in indicia of probable cause that even

1

the "good faith" exception cannot save the items seized from the McCormick Avenue property from being suppressed.

**FACTUAL BACKGROUND**

On April 15, 2019, Magistrate Judge J. Mark Coulson signed a search and seizure warrant for Owen Nesmith's home. *Exhibit #1*. The warrant was executed the next day when a number of items were seized by law enforcement, including cell phones, flash drives, a computer, cassette tapes and documents. A complete list of the property seized is attached. *Exhibit #2*. A single affidavit was submitted in support of the warrant challenged here and seven other warrants for properties that were the residences of Mr. Nesmith's co-defendants. *Exhibit #3*.

The evidence offered in support of the warrant for Mr. Nesmith's home is located on pages 33-36 of the affidavit. The affidavit relies solely on representations made by three cooperating inmates at MCI-J, alleging various actions taken by Mr. Nesmith. In the redacted copy of the affidavit provided to defense counsel, the inmates' accounts provide no dates, or even ranges of dates, on which these actions allegedly occurred.

It is possible that dates are given in the redacted portions of the affidavit. But if that is the case, unless the inmates' accounts were inconsistent with the dates alleged in the Indictment and with other information received in discovery, the events they describe allegedly occurred on dates between one year and three months and four years before the warrant was signed.[1]

---

[1] Cooperating Inmate #1 alleged that Owen Nesmith was involved in smuggling contraband into MCI-J. Additionally, he alleged that he was sexually assaulted by Mr. Nesmith. *Id., at 33-34*. These events are elsewhere alleged to have occurred in 2015. Cooperating Inmate #2 provided information to law enforcement that Owen Nesmith was smuggling K-2, suboxone strips, and tobacco into MCI-J. *Id., at 34*. These events are elsewhere alleged to have occurred in 2016 and 2017. Cooperating Inmate #3 alleges that Owen Nesmith sexually assaulted him and took pictures of him. *Id., at 35*. These events are elsewhere alleged to have occurred in 2017. At the

Additionally, all of the cooperating inmates' representations related to events which alleged occurred at MCI-J. The only arguable reference to Mr. Nesmith's residence was an allegation by Cooperating Inmate #3 that Mr. Nesmith had taken shirtless photographs of him to "'have something of him' when he was 'at home,'" and the warrant affiant's assertion, without any supporting evidence, that he "believes" Mr. Nesmith "likely still has those photos in his possession." As noted, the redacted affidavit contains no date for the alleged taking of these photographs; if a date is given in the redacted portions it could not be later than 2017.

Therefore, whether or not specific dates appear in the redacted portions of the warrant affidavit, the affidavit includes no facts to suggest that, if evidence of a crime had ever been in Mr. Nesmith's home, there was probable cause to believe it would be found there in April of 2019.

## LEGAL ARGUMENT

The search of the 5604 McCormick Avenue property violated the Fourth Amendment to the United States Constitution because the affidavit underlying the warrant did not establish probable cause to believe evidence of a crime would be found within that house. *See Doe v. Broderick,* 225 F.3d 440, 451 (4th Cir. 2000) ("The fundamental constitutional principle that search warrants must be founded upon probable cause derives from the language of the Fourth Amendment itself, which provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'"); *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (officer seeking issuance of search warrant must present affidavit containing facts sufficient to "provide the magistrate with a substantial basis for determining the existence of probable cause"; probable

---

time of the execution of the warrant, Owen Nesmith had not worked at MCI-J for over fifteen months.

cause requirement demands that officer demonstrate "fair probability" that evidence of crime will be found at particular place); *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (probable cause means "more than bare suspicion").

"In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *See United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n. 6 (1978)).

Probable cause for a search warrant "exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place." *United States v. Doyle*, 650 F.3d 460, 471 (4th Cir. 2011) (quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996)).

In this case, the affidavit attempts to draw a connection between crimes that are alleged to have occurred at MCI-J and Owen Nesmith's residence. There are no specific allegations that draw a nexus between Owen Nesmith's home and the illegal smuggling of suboxone, K-2, or other contraband. In regard to the sexual assault allegations, there is an uncorroborated assertion made by Cooperating Witness #3 that Owen Nesmith took a picture of him and intended to keep it. Yet, at the time the search warrant was requested, Owen Nesmith had not worked at MCI-J for over fifteen months. The bald assertion that Owen Nesmith "took the photos of CI-3 as a memento of CI-3 and likely still has those photos" (*Id. at 35)* is speculative and amounts to no more than a "hunch." To establish probable cause, law enforcement must identify particularized information about why they suspect evidence of a specific crime will be found in a specific place

in a warrant application. In this case, there simply isn't a sufficient nexus between the crimes alleged to have happened at MCI-J and Owen Nesmith's residence.

In *Doyle*, the Fourth Circuit held that evidence of child sex abuse, even where the victim reported that the suspect had showed him pictures of nude children, was not enough to support the search of the suspect's home for evidence of child pornography crimes. *See* 650 F.3d at 472. The warrant application was devoid of any reference to whether or not the images had been shown in the defendant's home or when they had been shown to the victim, and the court held that without such details, there was no probable cause to search the defendant's home for child pornography. *Id.* at 474.

As in *Doyle*, the connection between the alleged crimes which occurred at MCI-J and Owen Nesmith's residence amounts to no more than law enforcement's "hunch" that the searched residence contained evidence of a crime. Even "logical inferences, without more, cannot support a finding of probable cause as a matter of law." *United States v. Church*, No. 3:16CR92, 2016 WL 6123235, at *3-4 (E.D. Va. Oct. 18, 2016) (ruling that there was no probable cause for a search of certain electronic devices, and the good faith exception did not apply, because the warrant application did not explicitly connect evidence of the sex crimes being investigated to the electronic devices that were the subject of the warrants) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *Doyle*, 650 F.3d at 472).

Time is a crucial element to the issuance of a search warrant. "Consequently, evidence seized pursuant to a warrant supported by stale probable cause is not admissible in a criminal trial to establish the defendant's guilt." *United States v. McCall,* 740 F.2d 1331, 1336 (4th Cir. 1984). A warrant may be suspect because the information on which it rested was arguably too old to furnish "present" probable cause. *Id.* Probable cause must "properly appear when the

warrant issues….The new warrant must rest upon a proper finding and statement by the commissioner that probable cause *then* exists." *Sgro v. United States,* 287 U.S. 206, 211 (1932) (emphasis added).  Staleness is shorthand for the notion that some evidence of wrongdoing is so old that it cannot support probable cause on its own.  *United States v. Ramburg*, 114 Fed.Appx 78, 82 (4th Cir. 2004).

The passing in time of at least fifteen months, and up to four years, between the time the events described in the affidavit are alleged to have occurred and the search defeats any argument that probable cause was present in April of 2019.  There "is no support for the contention that once probable cause exists to search …, it remains valid ad infinitum*." Doyle*, 650 at 475 (Even if the affidavit offered in support of the warrant in that case established probable cause, it "was completely devoid of indicia that the probable cause was not stale.")

A police officer may rely in good faith on executing a search warrant issued by a judicial magistrate, however there are four exceptions to the "good faith" rule as set forth in *United States v. Leon*, 104 S. Ct. 3405 (1984):

> (1) when the affiant based his application on knowing or reckless falsity;
> (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a "rubber stamp" for the police;
> (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
> (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid.

*Doyle*, 650 F.3d at 467 (4th Cir. 2011) (quoting *United States v. DeQuasie*, 373 F.3d 509, 519–20 (4th Cir. 2004)).

In this case the connection between the crimes alleged to have occurred at MCI-J and Mr. Nesmith's residence is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  This is plainly the case if the affidavit contains no dates

whatsoever for the acts alleged by the cooperating inmates—if so, there was a facial absence of probable cause. But even if the dates are included in the redacted portions, they are so long before the date of warrant's issuance that no reasonable officer could believe those alleged acts by Mr. Nesmith gave rise to probable cause to search his house in April of 2016. Nor could an officer reasonably believe that his *ipse dixit* claim to "believe" that Mr. Nesmith still possessed a photograph, without any supporting evidence, could constitute probable cause to search the residence. The good faith doctrine does not save the April 16, 2019 search of the McCormick Avenue property.

## CONCLUSION

Wherefore, for the above reasons and for any other reasons which may appear to the Court, Owen Nesmith moves to suppress all tangible and derivative evidence recovered from the search of his home located at 5604 McCormick Avenue in Baltimore, Maryland.

                    Respectfully submitted,

                    JAMES WYDA
                    Federal Public Defender

                    _____/s/_____
                    DAVID WALSH-LITTLE, #23586
                    Assistant Federal Public Defender
                    Tower II, 9th Floor
                    l00 South Charles Street
                    Baltimore, Maryland 21201
                    Tel: (410) 962-3962
                    Fax: (410) 962-0872
                    Email: david_walsh-little@fd.org

                    DOUGLAS R. MILLER (#18309)
                    Assistant Federal Public Defender
                    6411 Ivy Lane, Suite 710
                    Greenbelt, Maryland 20770
                    Phone: (301) 344-0600
                    Fax: (301) 344-0019
                    Email: Douglas_Miller@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Motion was served on all counsel via CM/ECF.

                    _____/s/_____
                    DAVID WALSH-LITTLE, #23586
                    Assistant Federal Public Defender