

19 - 1 3 5 4 JMB —          19 - 1 3 6 1 JMC

## DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

| IN THE MATTER OF SEARCH OF: | UNDER SEAL |
|---|---|
| 1. 2725 Gwynns Falls Pkwy, Baltimore, MD 21216 | |
| 2. 2524 N Ellamont, Main Floor, St Baltimore, MD 21216 | |
| 3. 4940 Carmine Ave, Baltimore, MD 21207 | |
| 4. 5263 St Charles Ave, Baltimore, MD 21215 | |
| 5. 40 Badger Gate Ct, Catonsville, MD 21228 | |
| 6. 14 Neptune Ct, Parkville, MD 21234 | |
| 7. 5604 McCormick Ave, Baltimore, MD 21206 | |
| 8. 1703 N Warwick Ave, Baltimore, MD 21216 | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Joseph Perrino, Special Agent (SA), Federal Bureau of Investigation (FBI), Baltimore, Maryland Field Office, being duly sworn, states the following:

1.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 1962(d), 18 U.S.C. § 1349, 18 U.S.C. § 1956(h), 18 U.S.C. § 846, and related offenses.

2.      For the purpose of the instant applications for search warrants, your Affiant is a federal law enforcement officer under applicable provisions of the United States Code and under Rule 41 of the Federal Rules of Criminal Procedure.

1

19 - 1 3 5 4 JMC     ⎯     19 - 1 3 6 1 JMC

3.      I am a Special Agent with the FBI and have been since July 2015.  I received extensive training in interview and interrogation techniques, arrest procedures, and the preparation and execution of search and seizure warrants.  I also have assisted in white collar and Organized Crime and Drug Enforcement Task Force (OCDETF) investigations in various capacities.  As a Special Agent, I have written and executed multiple search warrants, participated in the execution of multiple Title III interceptions, including reviewing taped conversations pertaining to organized crime and narcotics organizations, and planned and executed multiple arrest operations.  I have also participated in several prison corruption cases and am a member of the Maryland Prison Corruption Task Force that was established to combat corruption in Maryland prisons.

4.      In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies.   In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone PEN register and caller identification system data; conducting court-authorized electronic surveillance; and preparing and executing search warrants that have led to seizures of narcotics and other contraband.

5.      As a law enforcement officer, I have learned about the varied illegal activities in which corrupt organizations and gangs will engage, including unlawful drug distribution, public corruption (involving prison personnel), use of cellular telephones to facilitate illegal activity, and aggravated assaults. Through training and experience I have become familiar with techniques useful in identifying corrupt organizations including the use of confidential informants, physical

2

19 - 13 5 4 JMC — 19 - 13 6 1 JMC

and electronic surveillance, telephone toll analysis, and investigative interviews. Through training and experience I have become familiar how corrupt organizations or gangs design their leadership structure, how they recruit members, the roles that correctional officers play to support the ranking gang members, and the illegal activity the gangs and correctional officers engage in to generate revenue. Through training and experience I gained a familiarization with the terminology and code words used by gangs and inmates to disguise and deter law enforcement officers from determining the nature of the illegal activity being discussed. For example, corrupt organizations or gangs will commonly use a specific vocabulary as code to represent illegal narcotics, prescription pills, weapons, opposing gang organizations, and acts of violence they are planning. This code language is usually specific to that organization. I have conferred with other law enforcement officers who have spent extensive time studying inmates and inmate gang members. These officers have shared with me their knowledge of the terminology used by the inmates to represent different types of illegal narcotics these individuals are trafficking within different prison facilities in the state of Maryland.

6.      The facts set forth in this affidavit are based upon my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other investigators, my and other investigators' review of documentation in relation to this investigation, communications with others, including individuals in the offenses under investigation, who have personal knowledge of the events and circumstances described herein, information gained from the interception of wire and electronic communications, and information gained from my training and experience. To the extent that this affidavit contains statements made by witnesses, those statements are set forth only in part and in substance and are intended to accurately convey the information, but not to be verbatim recitations, unless indicated otherwise. This affidavit is

3

19-13 54 JMC          19-13 61 JMC

submitted for the limited purpose of establishing probable cause in support of this application for search warrant, and thus it does not contain every fact known to me or the United States.

7.      Based on the investigation that I have participated in since August 2016, and for reasons set forth herein, there is probable cause to believe that inmate Corey ALSTON, Aldon ALSTON, Ashley ALSTON, inmate Jerrard BAZEMORE, case manager Robert DOGGETT, Correctional Officer (CO) Janel GRIFFIN, former inmate Irving HERNANDEZ, inmate Todd HOLLOWAY, Tyirisha JOHNSON, Jamia LAWSON, inmate Schvel MACK, former Correctional Dietary Officer (CDO) Patricia MCDANIEL, Ricky MCNEELY, Jerrell MCNEILL, inmate Larnell MEGGINSON, former CO Lieutenant Owen NESMITH, contract nurse Joseph NWANCHA, India PARKER, Lakeah PENDLETON, inmate Tavon PRICE, and others, identified and yet to be identified (collectively the "Target Subjects") have committed and are committing the offenses (hereafter the "Target Offenses") involving:

a.   Racketeering and Racketeering Conspiracy (Racketeer Influenced and Corrupt Organizations "RICO"), in violation of 18 U.S.C. §§ 1962(c), and punishable under 18 U.S.C. § 1963, by conducting the affairs of an "enterprise," that is, a group of individuals associated in fact, although not a legal entity, to wit: the Subjects and others, the activities of which affect interstate and foreign commerce, through a pattern of racketeering activity consisting the violations of federal law set forth in (b) through (d) below;

b.   Title 21, United States Code, Sections 841 and 846 (Drug Trafficking);

c.   Title 18, United States Code, Section 1956 (Money Laundering);

d.   Title 21, United States Code, Section 2 (Aider and abettor); and

e.   Title 18, United States Code, Section 242 (Deprivation of Rights).

4

19 - 1 3 5 4 JMC   —   19 - 1 3 6 1 JMC

8.    On March 28, 2019, a Grand Jury sitting in Baltimore returned an eleven count indictment charging the following:

    a.  Count One - Racketeering, 18 U.S.C § 1962(c)

        i.    Owen Nesmith
        ii.   Patricia McDaniel
        iii.  Janel Griffin
        iv.   Robert Doggett
        v.    Ricky McNeely
        vi.   Joseph Nwancha
        vii.  Corey Alston
        viii. Jerrard Bazemore
        ix.   Irving Hernandez
        x.    Todd Holloway
        xi.   Schvel Mack
        xii.  Larnell Megginson
        xiii. Tavon Price
        xiv.  Aldon Alston
        xv.   Ashley Alston
        xvi.  Tyirisha Johnson
        xvii. Jamia Lawson
        xviii. Jerrell McNeill
        xix.  Lakeah Pendleton

    b.  Count Two - Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, 21 U.S.C. § 846

        i.    Patricia McDaniel
        ii.   Jerrard Bazemore
        iii.  Larnell Megginson
        iv.   Tavon Price
        v.    Jerrell McNeill
        vi.   India Parker
        vii.  Lakeah Pendleton

    c.  Count Three - Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, 21 U.S.C. § 846

        i.    Janel Griffin
        ii.   Joseph Nwancha
        iii.  Corey Alston
        iv.   Irving Hernandez
        v.    Schvel Mack
        vi.   Aldon Alston

SW09-0021

19 - 13 54 JMC          —          19 - 13 61 JMC

    vii.  Ashley Alston
   viii.  Tyirisha Johnson
    ix.  Jamia Lawson

d.  Count Four - Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, 21 U.S.C. § 846

    i.  Ricky McNeely
   ii.  Todd Holloway

e.  Count Five - Possession with Intent to Distribute Controlled Substances, 21 U.S.C. § 846(a)(1) and 18 U.S.C. § 2

    i.  Ricky McNeely

f.  Count Six - Possession with Intent to Distribute Controlled Substances, 21 U.S.C. § 846(a)(1) and 18 U.S.C. § 2

    i.  Patricia McDaniel

g.  Count Seven - Possession with Intent to Distribute Controlled Substances, 21 U.S.C. § 846(a)(1) and 18 U.S.C. § 2

    i.  Joseph Nwancha

h.  Counts Eight, Nine, and Ten - Deprivation of Rights under Color of Law, 18 U.S.C. § 242

    i.  Owen Nesmith

i.  Count Eleven - False Statements, 18 U.S.C § 1001(a)(2)

    i.  Owen Nesmith

## BACKGROUND OF INVESTIGATION

9.    In August of 2016, the FBI began investigating allegations of corruption occurring at the Maryland Correctional Institute Jessup (MCIJ). Information was brought to federal investigators of the FBI by a cooperating inmate that a senior correctional officer was involved in contraband smuggling activity included in the Target Offenses. Working with the Intelligence Unit assigned to MCIJ, the cooperating inmate's information was corroborated. The cooperating

6

SW09-0022

19 - 1 3 5 4 JMC    —    19 - 1 3 6 1 JMC

inmate then provided information on additional correctional officers involved in contraband smuggling at the facility. A second cooperating inmate provided similar information to investigators. The Intelligence Unit assigned to MCIJ was again able to corroborate both inmates' information and the investigation expanded to multiple correctional officers, other facility staff, volunteers, and contractors at the facility. Many of the correctional officers and staff that are reported to be engaged in contraband smuggling have multiple years of service with Maryland Department of Public Safety and Correctional Services (DPSCS).

10.     MCIJ is broken down into eight housing units with each housing unit being broken down further into east and west pods and upper and lower tiers. Items of contraband that are currently being smuggled into MCIJ include heroin, fentanyl, K-2[1] (synthetic cannabinoid), prescription pills, Suboxone[2] strips (buprenorphine), Methylenedioxymethamphetamine[3] (MDMA, commonly known as ecstasy or molly), cellular telephones, tobacco, food, alcohol, pornographic digital media, and forms of currency. Many of these items, including currency, narcotics, cellular telephones, tobacco and pornographic digital media moved in interstate commerce prior to being smuggled into MCIJ.

11.     Generally, inmates employ friends, girlfriends, and family members to assist with contraband smuggling and distribution. These individuals, collectively referred to as "facilitators," acquire contraband, collect payment for contraband sold in MCIJ by the inmate, package contraband, pass contraband to correctional officers, staff, and contractors in order to be brought into the prison, and sometimes smuggle small amounts directly to the inmate during visitation at

---

[1] A synthetic cannabinoid and, based on its chemical compound, a Schedule I controlled substance

[2] Buprenorphine, a/k/a "Suboxone," is a Schedule III Controlled Substance. It is used to treat adults who are dependent on opioids.

[3] Methylenedioxymethamphetamine (MDMA) commonly known as ecstasy or molly, a Schedule I substance.

7

SW09-0023

19 - 1 3 5 4 JMC    19 - 1 3 0 1 JMC

the prison.   The use of telephones is an integral part of the contraband smuggling activity. Facilitators coordinate with inmates through contraband cellular telephones and over the recorded Global Tel Link system or "jail calls."   Often the inmates attempt to conceal their identity by using the account of another inmate.   Your Affiant also knows that inmates often share contraband cellular telephones and work together to facilitate contraband smuggling.   Contraband cellular telephones are also used by inmates to contact financial institutions, like PayPal, directly to add funds to accounts or check account balances in an effort to further their contraband smuggling operation.

12.   In addition to utilizing facilitators, inmates involved in the Target Offenses often develop close personal relationships with correctional officers and staff.   These personal relationships often involve sexual activity inside the facility that develop into business relationships where the correctional officer or staff member begins smuggling contraband into the facility for the inmate.

### GENERAL INFORMATION ON NARCOTICS INVESTIGATIONS

13.   Based on my training, experience, and participation in narcotics investigations and the training and experience of other agents and detectives with whom I am working closely in this investigation, I know that:

    a.   Individuals who deal in illegal controlled substances keep such controlled substances, as well as paraphernalia, in their residences and vehicles.   In addition, such individuals also maintain books, records, receipts, notes, ledgers, bank records, money orders and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances. These books, records, receipts, notes, ledgers, bank records, money orders, etc., are

8

SW09-0024

19 - 1 3 5 4 JMC   ——   19 - 1 3 6 1 JMC

maintained in locations to which the dealers in illegal controlled substances have ready access, such as in secure locations within their residences and their curtilage, the residences of family members, friends and associates, the places of operation of their drug distribution activities, such as stash houses or safe houses, in business locations with which the trafficker is associated, or in storage areas. I know that individuals involved in narcotics distribution often maintain these records for lengthy periods of time, and often hide them in places in their homes to avoid detection. Further, these individuals who deal in illegal controlled substances often store hard copy and electronic records associated with their illicit narcotics trafficking for long periods of time.

b. Individuals engaged in the type of criminal conduct constituting the Target Offenses described herein routinely conceal in their residences and/or curtilage, the residences of family members, friends and associates, as well as their business locations, storage areas, and/or in the places of operation of their drug distribution activities, such as stash houses or safe houses, quantities of currency, financial instruments, and other items of value, typically proceeds of illegal controlled substance transactions.

c. Individuals engaged in the type of criminal conduct constituting the Target Offenses described herein commonly maintain telephone numbers and address books or papers which reflect names, addresses and/or telephone numbers for their associates in their illegal organization. These individuals often utilize cellular telephones, pagers and telephone systems to maintain contact with their associates in their illegal businesses. These telephone records and bills are often found in their

9

SW09-0025

19 - 13 54 JMC   —   19 - 13 61 JMC

place of residence, or the residences of family members, friends or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses, safe houses or storage areas.

d. Individuals engaged in the type of criminal conduct constituting the Target Offenses described herein often take photographs of themselves, their associates, their property and illegal contraband. These photos are usually maintained in their place of residence, or the residences of family members, friends or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses, safe houses or storage areas.

e. Individuals engaged in the type of criminal conduct constituting the Target Offenses described herein maintain documents, letters and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses or safe houses, or in storage areas. This documentary evidence includes, but is not limited to, telephone numbers, telephone books, address books, credit card and hotel receipts, electronic payment receipts, P.O. Box receipts and documentation, airplane and bus tickets and receipts, car rental receipts, amounts and records in fictitious names, false identification, money orders, cashier's checks relating to cash transactions, and records indicating the existence of storage facilities used in narcotics trafficking.

f. Individuals engaged in the type of criminal conduct constituting the Target Offenses described herein stay in regular contact with one another. This contact

10

SW09-0026

19 - 13 54 JMC   —   19 - 13 61 JMC

does not terminate once an individual is incarcerated.  Incarcerated members of drug organizations routinely send letters to and receive letters from other members of the organization in which they discuss ongoing criminal activities and request various forms of assistance, from financial help to help in obtaining contraband, including narcotics. In addition, incarcerated members often keep photographs of themselves and other members of their organization in order to obtain respect from other inmates.

## PREMISES TO BE SEARCHED

14.     Accordingly, your Affiant submits there is probable cause to believe that the items set forth in Attachment B, all of which constitute evidence, fruits, and instrumentalities of, inter alia, violations of the Target Offenses are presently located at the following locations (the "Subject Premises"):

a.  The residence of Tyirisha JOHNSON, Aldon ALSTON, and Ashley ALSTON located at 2725 Gwynns Falls Pkwy Baltimore, MD 21216. JOHNSON is the mother of two of inmate Corey ALSTON's children. Aldon ALSTON is Corey ALSTON's father and Ashley ALSTON is his sister. All three assisted Corey ALSTON's contraband smuggling operation by collecting contraband, packing contraband, managing money, and meeting with staff members to deliver contraband.  See paragraphs 17 through 23 for further discussion.

b.  The residence of Jamia LAWSON located at 2524 N Ellamont St, Main Floor, Baltimore, MD 21216. LAWSON is the girlfriend of Corey ALSTON. She assisted him with his contraband smuggling operation by collecting contraband, managing

11

SW09-0027

19 - 1 3 5 4 JMC       19 - 1 3 6 1 JMC

money, and meeting with staff members to deliver contraband. See paragraphs 24 through 33 for further discussion.

c.   The residence of Janel GRIFFIN located at 4940 Carmine Ave, Baltimore, MD 21207. GRIFFIN is a Correctional Officer (CO) at MCIJ.  She smuggled contraband into the facility for multiple inmates, including Corey ALSTON.  In addition, cooperating inmates told investigators that GRIFFIN was in a personal and business relationship with inmate Jamar Anderson (AKA "Hammer"). See paragraphs 34 through 39 for further discussion.

d.   The residence of Patricia MCDANIEL located at 5263 St Charles Ave, Baltimore, MD 21215. MCDANIEL was a Correctional Dietary Officer (CDO) who was in personal and business relationship with inmate Jerrard BAZEMORE. On September 17, 2017, members of DPSCS K-9 Unit recovered contraband on MCDANIEL in the parking lot of MCIJ. See paragraphs 40 through 48 for further discussion.

e.   The residence of Lakeah PENDLETON located at 40 Badger Gate Ct, Catonsville, MD 21228. PENDLETON is an associate of BAZEMORE who collected, packaged, and delivered contraband to MCNEILL who gave them to MCDANIEL to smuggle to BAZEMORE inside MCIJ. See paragraphs 49 through 57 for further discussion.

f.   The residence of India PARKER located at 14 Neptune Ct, Parkville, MD 21234. PARKER is listed as "spouse" on inmate Tavon PRICE's visiting list.  She purchased and collected contraband to be delivered into MCIJ. See paragraphs 58 through 67 for further discussion.

12

SW09-0028

19 - 1 3 5 4 JMC    19 - 1 3 6 1 JMC

g.  The residence of Owen NESMITH located at 5604 McCormick Ave, Baltimore,
    MD 21206.  NESMITH is a former Correctional Officer Lieutenant at MCIJ who
    retired in 2017.  Cooperating inmates have provided testimony that NESMITH
    smuggled contraband into MCIJ, had inappropriate sexual relations with inmates,
    and sexually assaulted inmates.  See paragraphs 68 through 77 for further
    discussion.

h.  The residence of Robert DOGGETT located at 1703 N Warwick Ave, Baltimore,
    MD 21216.  DOGGETT is a Case Manager at MCIJ.  DOGGETT smuggled tobacco
    into MCIJ for an inmate in exchange for bribes.  See paragraphs 78 through 85 for
    further discussion.

## TITLE III INTERCEPTIONS

15.  Interception of wire communication were authorized for the following cellular
telephones:

a.  On August 25, 2017, Honorable Ellen L. Hollander of the District of Maryland
    authorized the interception of wire communications for a 30 day period on cellular
    telephone number (410) 240-0026 and (410) 622-8068, Target Telephone A (TTA),
    used by BAZEMORE and PRICE.  Interception of TTA ended on September 23,
    2017.

b.  On October 30, 2017, Honorable Ellen L. Hollander of the District of Maryland
    authorized the interception of wire communications for a 30 day period on cellular
    telephone number (443) 529-4223, Target Telephone B (TTB), used by
    JOHNSON.  Interception of TTB ended on November 22, 2017.

13

SW09-0029

19 - 1 3 5 4 JMC   —   19 - 1 3 6 1 JMC

 c. On November 17, 2017, Honorable Ellen L. Hollander of the District of Maryland authorized the interception of wire communications for a 30 day period on cellular telephone number (443) 286-4748, Target Telephone C (TTC), used by Corey ALSTON.  Interception of TTC ended on November 17, 2017.

 d. On November 22, 2017, Honorable Ellen L. Hollander of the District of Maryland authorized the interception of wire communications for a 30 day period on cellular telephone number (240) 917-6209 and (443) 531-3127, Target Telephone D (TTD), used by Corey ALSTON.  Interception of TTD ended on December 1, 2017.

**GRAND JURY**

 16. Starting in January 2019, investigators and Federal prosecutors began interviewing cooperators in the Federal Grand Jury. ███████████████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

**STATEMENT OF PROBABLE CAUSE FOR EACH LOCATION**

**A.  2725 Gwynns Falls Pkwy, Baltimore, MD 21216 – Residence of Tyirisha JOHNSON, Aldon ALSTON, and Ashley ALSTON**

 17. According to Maryland Vehicle Administration (MVA) records JOHNSON, Aldon ALSTON, and Ashley ALSTON reside at 2725 Gwynns Falls Pkwy, Baltimore MD 21216.  In addition, multiple grand jury subpoenas documents list 2725 Gwynns Falls Pkwy, Baltimore, MD 21216 as JOHNSON's address.  On November 5, 2017, law enforcement officers conducted

14

SW09-0030

19 - 1 3 5 4 JMC   —   19 - 13 6 1 JMC

surveillance at 2725 Gwynns Falls Pkwy, Baltimore, MD 21216 and observed Aldon ALSTON at the residence and JOHNSON was observed in the vicinity of the residence. On January 2, 2019, law enforcement conducted surveillance at 2725 Gwynns Falls Pkwy, Baltimore, MD 21216 and observed again Aldon ALSTON at the residence.

18.     The address is a set of two story brick row homes. Number 2725 is second from the end on the right if you are facing the unit. The front door has a metal storm door with an awning over top. There is a window to the right of the door with a sail boat type decoration in the window. There is a small window to the right of the window and three smaller windows on the second floor. The rear of the residence is accessed by an alleyway. Each unit has two parking spots to the rear of their residence. The rear of 2725 has a door leading out from the residence that has another striped metal storm door.

### 1.  Ashley ALSTON provided JOHNSON with contraband

19.     On November 1, 2017, at approximately 11:13 pm, an outgoing text to Corey ALSTON from JOHNSON was intercepted on TTB. The text stated, "ard im rey get in the shower Ash said she talked to your father." At approximately 11:18 pm, an incoming text from Corey ALSTON to JOHNSON was intercepted on TTB. The text stated, "ok." At approximately 11:20 pm, Corey ALSTON sent a follow up text that stated, "So did she give that molly to my father as well or my money back ?" At approximately 11:22 pm, JOHNSON replied with a text message that read, "idont know bayy." At approximately 11:41 pm, an incoming call from Ashley ALSTON to JOHNSON was intercepted on TTB. During the call Ashley ALSTON told JOHNSON to "come to the front door...in front of you" and JOHNSON replied, "I just got out of the shower, what do you got to show me?" At approximately 11:44 pm, an incoming call from Corey ALSTON to JOHNSON was intercepted on TTB. During the call JOHNSON stated, "I got

15

SW09-0031

19 - 13 5 4 JMC  —  19 - 13 6 1 JMC

your stuff" and Corey ALSTON replied, "What?" JOHNSON stated, "From Ashley bae." Corey ALSTON asked if she remembered last time that it was "big rocks and shit" and JOHNSON responded, "Yeah." Corey ALSTON then asked if it was "clear" and JOHNSON said it was. Corey ALSTON then asked, "Why didn't you give it to my father" and JOHNSON responded that "he's asleep" and she "just got it." Your Affiant knows that "molly" is a common name for Methylenedioxymethamphetamine, a Schedule 1 controlled substance.

20.     Based off of the intercepted communications, your Affiant believes that Corey ALSTON had Ashley ALSTON purchase "molly" to be smuggled into the prison facility by a staff member and that JOHNSON was going to provide the "molly" to Aldon ALSTON to provide to that staff member.

### 2. JOHNSON met with NWANCHA

21.     On November 5, 2017, at approximately 3:22 pm, an incoming text from Corey ALSTON to JOHNSON was intercepted on TTB. The text read, "My father is about to give u $200 put it with that $300 and give the man $500 with that K2 and strips please. Thank u very much." At approximately 3:38 pm, an incoming call from Corey ALSTON to JOHNSON was intercepted on TTB. During the call JOHNSON stated, "Alright let me call him and tell him the gas station or something?" and Corey ALSTON asked, "You want me to tell my father to go up there instead of you?" Corey ALSTON then asked where his father, Aldon ALSTON, was and to have her put him on the phone. Corey ALSTON and Aldon ALSTON then coordinated about JOHNSON's meeting. Corey ALSTON asked, "What's up? You want to meet him?" and Aldon ALSTON replied, "I mean I ain't got no problem with it, if that's the case. But we shouldn't meet this close to the house." Corey ALSTON explained that he did not want JOHNSON to have to go anywhere and Aldon ALSTON stated, "If something was to go down them people going to talk on

16

SW09-0032

19 - 1 3 5 4 JMC        19 - 1 3 6 1 JMC

the other end." Corey ALSTON and Aldon ALSTON continued to talk about where JOHNSON should meet the person picking up the contraband then JOHNSON got back on the phone. Corey ALSTON told JOHNSON to "leave out the back door and come back in the back door."

22.     At approximately 3:36 pm, an incoming call from NWANCHA to JOHNSON was intercepted on TTB. NWANCHA stated that he entered the street. Your affiant conducted surveillance and observed NWANCHA in the vicinity of 2725 Gwynns Falls Pkwy Baltimore, MD 21216. At approximately 3:40 pm, your affiant observed JOHNSON meet with the driver of a black Mercedes and hand a bag through the passenger window. Your affiant knows that NWANCHA was a contract nurse at MCIJ and that JOHNSON met with NWANCHA to deliver contraband, including narcotics, to him to smuggle into the MCIJ for Corey ALSTON.

### 3. Items expected to be located 2725 Gwynns Falls Pkwy, Baltimore, MD 21216

23.     Your affiant knows that JOHNSON, Aldon ALSTON, and Ashley ALSTON used 2725 Gwynns Falls Pkwy, Baltimore, MD 21216 to collect and package narcotics that were smuggled into MCIJ for Corey ALSTON and JOHNSON managed Corey ALSTON's financial accounts. Your affiant believes law enforcement will find jail letters from Corey ALSTON, financial account documents, money order receipts, contraband packaging material, and cellular telephones used to coordinate with drug dealers and corrupt staff members. Your affiant knows that electronic payment companies, like PayPal, often send documents to residences and your affiant believes those documents are likely to be at this residence.

### B. 2524 N Ellamont St, Main Floor, Baltimore, MD 21216 – Residence of Jamia LAWSON

24.     According to MVA records, LAWSON resides at 2524 N Ellamont St, Baltimore, MD 21216. However, Baltimore Gas and Electric (BGE) lists 2524 North Ellamont St, Baltimore, MD 21216 as two separate residences and law enforcement has observed multiple mail boxes for

SW09-0033

19 - 1 3 5 4 JMC    —    19 - 1 3 6 1 JMC

the residence. Information provided by the United States Postal Service (USPS) indicates that LAWSON resides on the Main Floor of the residence. Law enforcement has also conducted surveillance in the vicinity of 2524 N Ellamont Street, Baltimore, MD 21216 and observed a vehicle registered to LAWSON in the vicinity of the residence.

25. The residence is a two story duplex building, attached to the residence to the north, with a small alley between it and the single family residence to the south. The residence has steps leading up to a covered front porch, with brick siding and a white door offset to the north of the building, there are two windows between the steps and the front door. There are three windows on the second floor of the residence facing east. There is a rear door that leads to an alley, between rows of houses, to the west of the residence. The residence number is displayed above the front door. The residence is divided into an upper and lower apartment and LAWSON resides on the Main Floor.

### 1. LAWSON collected contraband to deliver to NWANCHA

26. On November 23, 2017, at approximately 10:03 pm, Corey ALSTON sent an outgoing text message to LAWSON that was intercepted on TTD. The text message read, "Mia if u ain't busy tomorrow I need u to make 2 runs for me please." At approximately 10:44 pm, after a short text exchange, "I will let u know tomorrow because I don't know What my day will consist of tomorrow" and Corey ALSTON sent a text back at approximately 11:14 pm that read, "Understandable." Your affiant believes that when Corey ALSTON was referring to "runs" he was asking LAWSON to pick up contraband and money to be packaged together to give to a staff member so it could be smuggled into MCIJ.

27. On November 24, 2017, at approximately 11:47 am, Corey ALSTON sent an outgoing text message to LAWSON that was intercepted on TTD. The text message read, "How

18

SW09-0034

19 - 1 3 5 4 JMG    —    19 - 1 3 6 1 JMG

much money do u have all together ?" and LAWSON responded, "300." At approximately 6:08 pm, Corey ALSTON made an outgoing call to LAWSON on TTD. During the conversation, Corey ALSTON stated that his father had "$400" and he wanted her to "pick it up." Your affiant believes that the money that LAWSON was collecting was for a payment to a staff member to smuggle contraband into MCIJ.

28.     On November 24, 2017, at approximately 11:14 pm, Corey ALSTON sent an outgoing text message to LAWSON that was intercepted on TTD. The text message read, "What's everything u got ?" LAWSON responded with a text message at approximately 11:15 pm that stated, "stuff from the man 700 and phone." Your affiant believes the "stuff from the man" is a reference to drugs, the 700 a reference to money for a bribe payment, and the phone is a cell phone that Corey ALSTON planned to have smuggled into the facility.

29.     At approximately 11:21 pm, Corey ALSTON made an outgoing call to LAWSON on TTD. During the call Corey ALSTON stated, "If you feel like you can't meet him tomorrow, is there any way you can swing by where you met my Father at and give everything to my Father and my Father will meet him up there or is that, or will that taking you out your way?" LAWSON and Corey ALSTON discussed additional details when LAWSON stated, "Yeah, call me in the morning and um I'll let you know about everything." Your affiant believes that LAWSON collected money and contraband for Corey ALSTON to give to a staff member that she planned to meet with the following day.

30.     As mentioned above, on November 28, 2017, NWANCHA was caught by members of MCIJ's Intelligence Unit attempting to smuggling K2 into the prison facility. NWANCHA subsequently provided law enforcement with consent to download his cell phone. The following

19

SW09-0035

19 - 13 54 JMC       —     19 - 13 61 JMC

text message exchange between NWANCHA and LAWSON was located on the cell phone download and took place on November 25, 2017:

| LAWSON: | Hey how are you |
| NWANCHA: | I'm fine |
| NWANCHA: | How you |
| LAWSON: | I'm good are you going be able to meet me today |
| NWANCHA: | What time so I can call for a ride |
| NWANCHA: | Let me call my sister now and pick her car so it will be 2pm |
| NWANCHA: | Is that ok |
| LAWSON: | Ok as long as it's before 3 |
| NWANCHA: | Ok |

Your affiant believes that LAWSON met with NWANCHA to deliver the contraband and money that she had collected for Corey ALSTON and that NWANCHA planned to smuggle that contraband into MCIJ for Corey ALSTON.

## 2. LAWSON collects and sends money for Corey ALSTON's contraband business

31.    On November 26, 2017, at approximately 12:17 am, Corey ALSTON sent an outgoing text message to LAWSON that was intercepted on TTD.  The text message read, "Mia text me the man information so I can send a Western Union please I deleted it. His name, city and state and zip code" and he followed up with a second text that read, "U probably still have it in ur text messages."  At approximately 12:19 am, LAWSON responded with a text message that read, "What man bay" then followed up with a second text message that read, "Joseph nwancha 9659 Muirkirk Road Apt c124 Laurel MD 20708."  Your affiant believes that LAWSON had NWANCHA's information because she had previously sent him a money order for contraband to be smuggled into MCIJ for Corey ALSTON.

32.    On November 28, 2017, at approximately 12:56 am, Corey ALSTON sent an outgoing text message to LAWSON that was intercepted on TTD.  The text message read, "Let me know if u received any Western Unions."  LAWSON responded with a text message that read,

20

SW09-0036

19-1354 JMC  —  19-1361 JMC

"Will do." Your affiant believes that Corey ALSTON had individuals inside MCIJ send LAWSON money orders in exchange for contraband sold within the facility.

### 3. Items expected to be located at 2524 N Ellamont St, Main Floor, Baltimore, MD 21216

·33.    Your affiant believes that LAWSON used 2524 N Ellamont St, Main Floor, Baltimore, MD 21216 to collect and package narcotics that were smuggled into MCIJ for Corey ALSTON and your affiant knows that LAWSON managed Corey ALSTON's financial accounts. Your affiant believes law enforcement will find jail letters from Corey ALSTON, financial account documents, money order receipts, contraband packaging material, and cellular telephones used to coordinate with drug dealers and corrupt staff members. Your affiant knows that electronic payment companies, like PayPal, often send documents to residences and your affiant believes those documents are likely to be at this residence.

### C. 4940 Carmine Ave, Baltimore, MD 21207 – Residence of Janel GRIFFIN

34.    According to MVA records GRIFFIN resides at 4940 Carmine Ave, Baltimore, MD 21207. On June 12, 2018, a law enforcement officer conducted surveillance at 4940 Carmine Ave, Baltimore, MD 21207 and observed GRIFFIN exit the residence.

35.    The residence is located within a set of townhouses. It is made up of red brick on the lower level and white siding on the upper level. The door is to the left of the lower level and is adjacent to the door to the neighbor's house (on the left). The numbers 4940 are in white lettering to the right of the door.

SW09-0037

19 - 1 3 5 4 JMC

19 - 1 3 6 1 JMC

**1. GRIFFIN meets with JOHNSON**

36.     On April 20, 2017, at approximately 8:04 pm, Corey ALSTON made an outgoing recorded call to JOHNSON on the jail phone system. During the call, the following conversation took place:

| ALSTON | Don't you still got, um, um, Shorty's number? |
|--------|-----------------------------------------------|
| JOHNSON | Who? |
| ALSTON | The one who you um, um just gave the stuff to. |
| JOHNSON | Yeah, I got the number |
| ALSTON | You feel like shooting a text. |
| JOHNSON | What you want me to say? |
| ALSTON | How you doing? This, this Ty, this Hammer's cousin. Say um, Hammer said can you make sure that you bring the rest of the stuff tomorrow. The rest, the rest of them tickets and you know that Charlie Brown tomorrow. |

Your affiant knows that "tickets" is a common nickname for Suboxone strips and "Charlie Brown" is a common nickname for tobacco. Your affiant believes that when Corey ALSTON referred to "the one who" JOHNSON "just gave the stuff to" he was referring to a CO and that he wanted to CO to bring the Suboxone strips and tobacco in the following day.

37.     On May 2, 2017, at approximately 9:25 am, Corey ALSTON made an outgoing recorded call to JOHNSON on the jail phone system. During the call, C. ALSTON said, "I need you to hit up Shorty and tell her you got all the money ready, you just gotta finish getting the stuff so if you don't have everything by today, she can come give it to me tomorrow." At approximately 8:19 pm, Corey ALSTON made an outgoing recorded call to JOHNSON on the jail phone system. During the call, JOHNSON told Corey ALSTON that she was "meeting with the girl tomorrow" and Corey ALSTON responded, "You need help putting the shit together. I told you to watch what you say over the phone." They then discuss JOHNSON receiving $50 from an inmate's relative. On May 3, 2017, at approximately 9:10 am, Corey ALSTON made an outgoing recorded call to JOHNSON on the jail phone system. During the call, the following conversation took place:

22

SW09-0038

19-1354 JMC        —        19-1361 JMC

| ALSTON | What time you supposed to give Shorty that stuff? |
| JOHNSON | I can't hear you |
| ALSTON | What time you supposed to give Yo that stuff? |
| JOHNSON | It's already done |
| ALSTON | Oh this morning? |
| JOHNSON | Yeah like 15 minutes ago. |

Your affiant knows that when individuals use cell phones they connect to cell phone towers and that the towers transmit the communication. Your affiant also knows that telecommunication providers keep records of historic cellular towers that are used by subscribers. Your affiant has reviewed toll records that contain historic cell tower records for both JOHNSON and GRIFFIN from May 3, 2017. JOHNSON received an incoming call from GRIFFIN at approximately 8:58 am and both JOHNSON's cell phone and GRIFFIN's cell phone were utilizing cell towers in the vicinity of JOHNSON's residence located at 2725 Gwynns Falls Pkwy, Baltimore, Maryland.

**2. GRIFFIN subpoena returns**

38.     A subpoena result received from Western Union contained a $400 payment on January 5, 2017, from Tameka SOOTE, phone number ████████ home address of ████ ████████ Glen Burnie, MD to Janel GRIFFIN, phone number 443-732-9957, and home address of 421 Normandy Ave, Baltimore, MD. Your affiant knows that Tameka FOOTE, at the same address as the Western Union return, was listed on the visiting list of inmate Orlando FOOTE, who was incarcerated at MCIJ in 2017, as his spouse. Your affiant also knows that Orlando FOOTE called phone number ████████ the phone number from the Western Union return, from the jail call phone system in January 2017. Your affiant has conducted surveillance at 421 Normandy Ave, Baltimore, MD and has observed GRIFFIN at the location. Your affiant has also reviewed subpoena results from Sprint showing that phone number 443-732-9957 was subscribed to GRIFFIN with a home address of 421 Normandy Ave, Baltimore, MD. Your affiant

23

19 - 13 5 4 JMC        19 - 13 6 1 JMC

believes that GRIFFIN was being paid by FOOTE's spouse, Tameka FOOTE, to smuggle contraband into MCIJ for Orlando FOOTE.

### 3. Items expected to be located at 4940 Carmine Ave, Baltimore, MD 21207

39.      Your affiant expects to find evidence at 4940 Carmine Ave, Baltimore, MD 21207 that shows GRIFFIN smuggles contraband into the facility for multiple inmates. In particular, jail letters or notes from inmates that describe contraband smuggling, financial documents, money order receipts, contraband packaging material, and cellular telephones used to coordinate contraband smuggling. Your affiant knows that electronic payment companies, like PayPal, often send documents to residences and your affiant believes those documents are likely to be at this residence. Your affiant also expects to find letters detailing a personal relationship that GRIFFIN had with at least one inmate. In particular, letters and notes from inmate Jamar Anderson (AKA "Hammer") who a cooperating inmate told investigators was in a personal relationship with GRIFFIN.

### D. 5263 St Charles Ave, Baltimore, MD 21215 – Residence of Patricia MCDANIEL

40.      According to MVA records MCDANIEL resides at 5263 Saint Charles Ave, Baltimore, MD 21215. On September 13, 2017, law enforcement conducted surveillance at 5263 Saint Charles Ave, Baltimore, MD 21215 and observed MCDANIEL enter the residence. On December 17, 2018, law enforcement conducted surveillance an observed a vehicle registered to MCDANIEL parked outside the residence.

41.      The residence is a two story single family home with off white siding that encompasses the home and windows are surrounded by white trim. It is located on the corner of Saint Charles Ave and an alley that runs alongside the residence. The front door is off center on the left of the home. There is a small staircase leading up to the front door. There is a small front

24

19 - 13 5 4 JMC          19 - 13 6 1 JMC

porch to the right of the front door. A large window is on the first floor and two small windows are seen on the top floor. The house number is present on the front door. The back yard is fenced in. There is a rear door to the house. It is a corner unit.

### 1. MCDANIEL meets with Jerrell McNEILL to pick up contraband

42.     On August 30, 2017, at approximately 9:19 pm, an outgoing call to MCNEILL from BAZEMORE was intercepted on TTA. MCNEILL told BAZEMORE that they were going to "have to go for tomorrow" because it was "a lot of shit" and BAZEMORE objected. MCNEILL then explained that it was going to be "too bulky" and that he had 140 "listerine." BAZEMORE told him to "just put it in there" and MCNEILL said he would have to "go to the store and get some balloons" to put everything together. MCNEILL also described having "all that K" that needed to go into the package. At the end of the call, BAZEMORE told MCNEILL that "she waiting on you." Your affiant knows that "listerine" is a reference to Suboxone strips.

43.     On August 30, 2017, at approximately 9:24 pm, an outgoing call to MCDANIEL from BAZEMORE was intercepted on TTA. BAZEMORE asked, "So what you going to make him come all the way to you huh?" and MCDANIEL responded, "I ain't say that."

44.     On August 30, 2017, law enforcement conducted surveillance on MCDANIEL. At approximately 11:00 pm, your affiant observed MCDANIEL parked on the back side of a Royal Farms located in Brooklyn, Maryland. Your affiant also observed a dark vehicle pull next to MCDANIEL and a man matching the description of MCNEILL, walked up to the driver's side door of MCDANIEL's vehicle. Both vehicles departed at approximately 11:05 pm. Your affiant has also reviewed video footage obtained from Royal Farms. The video showed the man standing at driver's door of MCDANIEL's vehicle and handing her something.

25

SW09-0041

19 - 1 3 5 4 JMG   —   19 - 1 3 6 1 JMG

45.   On September 1, 2017, at approximately 10:40 pm, an outgoing call to MCNEILL from BAZEMORE was intercepted on TTA.   During the call MCNEILL asked if "everything straight?" and BAZEMORE responded that it was.   MCNEILL then stated that he "did the best" he could and BAZEMORE told him that he, BAZEMORE, "fucked up cause" he "rushed it" and "that shit was left in" and it caused "the metal detector to go off." MCNEILL asked him to "say it again" and BAZEMORE told him that "the aluminum foil shit...made the metal detector go off."

46.   Your affiant knows that when MCNEILL referred to "listerines" he was referring to Suboxone strips and that "K" was K2. Your affiant believes when BAZEMORE told MCNEILL that "she waiting on you" he was referring to MCDANIEL and when he asked MCDANIEL if she was going to "make him come all the way to you" he was referring to MCNEILL.   Your affiant knows that MCDANIEL met with someone that night and that the person matched the description of MCNEILL and the vehicle matched the one registered to MCNEILL.   Your affiant also knows that staff and visitors at MCIJ are required to pass a security check point when entering MCIJ that includes a metal detector.   Your affiant believes that BAZEMORE had MCNEILL package contraband and that MCNEILL provided that contraband to MCDANIEL to smuggle into MCIJ for BAZEMORE and that there was packaging material left inside the contraband that made the metal detector go off.

## 2.  MCDANIEL was caught with contraband in the parking lot of MCIJ

47.   Your affiant has reviewed reports prepared by members of DPSCS's K-9 Unit regarding a K-9 interdiction of MCDANIEL on September 17, 2017.   The K-9 unit recovered a balloon that MCDANIEL threw on the ground after exiting her vehicle.   Your affiant has also reviewed Drug Enforcement Agency (DEA) Chemical Analysis Reports from the items recovered

26

SW09-0042

19 - 1 3 5 4 JMC        19 - 1 3 6 1 JMC

from MCDANIEL. The reports confirmed that the tested items contained heroin, fentanyl, ADB-FUBINACA (a chemical substance commonly referred to as K2), and Suboxone.

### 3.  Items expected to be located at 5263 Saint Charles Ave, Baltimore MD 21215

48.     Your affiant believes that MCDANIEL used 5263 Saint Charles Ave, Baltimore, MD 21215 to collect and package narcotics that were smuggled into MCIJ for Jerrard BAZEMORE and others.  Your affiant believes law enforcement will find jail letters, financial account documents, money order receipts, contraband packaging material, and cellular telephones used to coordinate contraband smuggling.  Your affiant knows that electronic payment companies, like PayPal, often send documents to residences and your affiant believes those documents are likely to be at this residence.  Your affiant also expects to find letters detailing a personal relationship that MCDANIEL had with at least one inmate.  In particular, letters and notes from inmate Jerrard BAZEMORE who a cooperating inmate told investigators was in a personal relationship with MCDANIEL.

## E.  40 Badger Gate Ct, Catonsville, MD 21228 – Residence of Lakeah PENDLETON

49.     On February 1, 2018, a law enforcement officer spoke with PENDLETON at 40 Badger Gate Ct, Catonsville, MD 21228 and she told law enforcement that she lived at the residence.

50.     The residence is located in a multi-unit red brick structure.  The front door is offset on the right side of the building and is framed with an off white molding.  The number 40 is located on the right side of the door in black lettering.  There are two windows to the left of the door and two upstairs window visible from the street.

27

SW09-0043

19-1354 JMC    —    19-1361 JMC

### 1. PENDLETON managed money for BAZEMORE

51.    On September 3, 2017, at approximately 3:42 pm, inmate Chester STONE started a text message conversation with PENDLETON that was intercepted on TTA. The following was the text message conversation:

| STONE | Could please load this 49593199022964 |
|-------|---------------------------------------|
| PENDLETON | Ok it's $100 |
| STONE | Ard thanks |
| PENDLETON | Is this mines or am holding it |
| STONE | U have to wait on Tic to let you know. Sorry. |
| PENDLETON | ok |

Your Affiant knows that BAZEMORE goes by the nickname "Tic."

52.    On September 8, 2017, at approximately 12:56 pm, BAZEMORE started a text message conversation with PENDLETON that was intercepted on TTA. The following was the text message conversation:

| BAZEMORE | 98770511644799 $50 |
|----------|---------------------|
| BAZEMORE | Let me know if it's good asap |
| PENDLETON | Good so know you have 3 left until the other card is ready. |
| BAZEMORE | Ok |

53.    On September 9, 2017, at approximately 12:57 pm, an outgoing call to PENDLETON from BAZEMORE was intercepted on TTA. During the call BAZEMORE told PENDLETON that he had "two more numbers" to give her and provided her with a 14 digit string of numbers. PENDLETON told BAZEMORE to "wait a minute" then BAZEMORE told her that he would just text. At approximately 1:02 pm, PENDLETON started a text message conversation with BAZEMORE that was intercepted on TTA. The following was the text message conversation:

| PENDLETON | It was good $100 |
|-----------|------------------|
| BAZEMORE | Check 62868585973731 |

54.    Your affiant knows that consumers are able to load money to Green Dot Money Pak cards and those cards can be loaded into consumer's account by entering a 14 digit card

28

SW09-0044

19 - 1 3 5 4 JMC          19 - 1 3 6 1 JMC

number. Your affiant also knows that Money Pak is a common form of currency used by inmates who traffic contraband inside prisons. Your affiant has reviewed subpoena returns from Green Dot and confirmed that the 14 digits numbers described above, and others, were loaded into an account registered to PENDLETON. Your affiant believes that these transactions were proceeds from BAZEMORE's contraband distribution operation and that PENDLETON loaded them to further his operation.

### 2. PENDLETON collected contraband for BAZEMORE

55.     On August 29, 2017, at approximately 8:39 pm, an outgoing call to PENDLETON from BAZEMORE was intercepted on TTA. During the call PENDLETON told BAZEMORE that she was waiting for "somebody named India" and that she "holla'd at the people for Stone too." BAZEMORE said, "It was one other person supposed to holla at you they got 80, yeah 80 joints." PENDLETON responded, "Bupes" and BAZEMORE said, "Yeah." BAZEMORE then told PENDLETON that he was to get her to give them to his "man immediately."

56.     Your affiant knows that "bupes" is a common nickname for Suboxone strips. Your affiant believes that when PENDLETON said she was meeting with "India" she was referring to India PARKER to get contraband and when she referred to meeting with "people for Stone" she was also getting contraband. Your affiant also believes that BAZEMORE told her that another person was going to bring her eighty Suboxone strips and, based off of above, that all of the contraband would go to his "man" MCNEILL who would then give it to MCDANIEL to be smuggled into BAZEMORE.

### 3. Items expected to be located at 40 Badger Gate Ct, Catonsville, MD 21228

57.     Your affiant believes law enforcement will find inmate letters, financial account documents, money order receipts, and cellular telephones used to coordinate contraband

SW09-0045

19 - 1 3 5 4 JMC    ⟷    19 - 1 3 6 1 JMC

smuggling at the residence. Your affiant knows that electronic payment companies, like PayPal, often send documents to residences and your affiant believes those documents are likely to be at this residence. Your affiant also expects to find letters from inmate Rodney Holloman (AKA "Blackface") detailing a personal relationship with PENDLETON.

## F. 14 Neptune Ct, Parkville, MD 21234 – Residence of India PARKER

58.     On February 22, 2019, a law enforcement officer conducted surveillance at 14 Neptune Ct, Parkville, MD 21234 and observed PARKER exit the residence and enter a vehicle.

59.     The residence is located within a multi-unit brick structure. There are two sets of doors for each grouping of residences. 14 Neptune Ct, Parkville, MD 21234 is the green door of the grouping with the number 14 in white lettering above the door. There is a window located directly to the right of the door with white shutters.

### 1. PARKER collected contraband to be smuggled into MCIJ

60.     On August 25, 2017, at approximately 6:48 pm, an outgoing call to PARKER from PRICE was intercepted on TTA. During the call PRICE asked if PARKER tried "to call the people" and she responded that she did and then said that "it was shipped out and it not UPS it's the postal service." PRICE and PARKER continue to talk about the package and how long it has taken to arrive. PRICE then told PARKER that he was going to call her back and let her "know what they say."

61.     On August 26, 2017, at approximately 12:59 pm, an outgoing call to (407) 633-8339 from PRICE was intercepted on TTA. During the call an automated voicemail message stated, "Hello and thank you for calling spice4fun.com. If this is in regards to an existing order, please leave us your name and order number. Otherwise, please state the reason for your call and a representative will get back to you as soon as possible. Thank you and have a great day." Your

SW09-0046

19-1354 JMC     —    19-1361 JMC

Affiant has visited spice4fun.com. It distributes brands of K2 that are marketed as "herbal incense." Your affiant knows that this is a common tactic used by online retailers of K2. Your affiant also believes that the package that PRICE and PARKER discussed in the previous paragraph was an order from this website and the contents of the package was intended to be smuggled into MCIJ.

62.     On August 29, 2017, at approximately 7:42 pm, an outgoing call to PARKER from PRICE was intercepted on TTA. During the call PRICE asked PARKER if she remembered meeting "the pregnant girl" and PARKER said she did not. PRICE then told PARKER that he was going to text her the "number again." PARKER stated she could not "meet nobody tonight" because she was not feeling well and PRICE told her that it had to "be done" that day. PARKER asked if she was supposed to give her the "mouthpiece shit" and PRICE said, "The other" and "anything else you got." PARKER then told him about something else and PRICE asked, "How many of them was it? Twenty five, right?" PARKER said, "Yea" and PRICE responded, "Alright count them again before you give them to her." At approximately 7:47 pm, an outgoing text to PARKER from PRICE was intercepted on TTA. The text read, "4436360633 her name is kia." Your affiant believes that PRICE was asking PARKER to meet with someone to provide items of contraband that she had to be smuggled into MCIJ. Your affiant knows that the phone number that PRICE texted to PARKER is PENDLETON's phone number and that, as described above, PENDLETON met with an individual named "India" to pick up contraband.

**2. PARKER managed money for PRICE**

63.     On September 1, 2017, at approximately 9:08 pm, an outgoing call to PARKER from PRICE was intercepted on TTA. During the call PRICE asked, "Where you at?" and

31

SW09-0047

19 – 1 3 5 4 JMC           19 – 1 3 6 1 JMC

PARKER responded, "Inside in the house." PRICE then told PARKER that "Yo about to bring some money around" and PARKER responded, "Alright."

64.    On September 4, 2017, at approximately 11:30 am, an incoming call from PARKER to PRICE was intercepted on TTA. During the call PRICE said, "One person gonna give you three hundred, just hold it, right?" and "Somebody supposed to be sending you some more money. $150 and another $100…" PARKER told PRICE, "I said the first person that came last night, gave me two hundred."

65.    On September 4, 2017, at approximately 11:46 am, PRICE started a text message conversation with PARKER that was intercepted on TTA. The following was the text message conversation:

| PRICE | Www.the officialk2incence.com |
| PRICE | Use to $200 |
| PARKER | ok excatly what to get |
| PARKER | screenshot it please |
| PRICE | I can't screenshot it |
| PRICE | As much bizarro as y can |
| PARKER | ok |

66.    Your affiant believes that PRICE was having people meet with PARKER to deliver money to further contraband smuggling into MCIJ. Your affiant knows that "bizarro" is a popular brand of K2 and is common in contraband smuggling. Your affiant believes that PRICE directed PARKER to spend $200 to purchase K2 to then have smuggled into MCIJ to distribute inside the facility.

### 3. Items expected to be located at 14 Neptune Ct, Parkville, MD 21234

67.    Your affiant believes law enforcement will find inmate letters, financial account documents, money order receipts, and cellular telephones used to coordinate contraband smuggling at the residence. Your affiant knows that electronic payment companies, like PayPal,

32

SW09-0048

19 - 13 54 JMC        19 - 13 61 JMC

often send documents to residences and your affiant believes those documents are likely to be at this residence. Your affiant also expects to find letters from inmate Tavon PRICE detailing a personal relationship with PARKER.

## G. 5604 McCormick Ave, Baltimore, MD 21206 – Residence of Owen NESMITH

68.     On October 12, 2018, law enforcement conducted an interview of Owen NESMITH at 5604 McCormick Ave, Baltimore, MD 21206. On December 31, 2018, law enforcement conducted surveillance on 5604 McCormick Ave, Baltimore, MD 21206 and observed a vehicle registered to NESMITH located in the driveway of the residence.

69.     The residence is a two story single family home with a basement that has a glass door that leads to the backyard. The front door is located in the middle of the structure and has a white storm door. There is a driveway on the left side of the structure that leads to a walk way and the front door. There are three windows on the second floor and three windows on the bottom floor that are visible from the street.

### 1. NESMITH smuggled contraband into MCIJ

70.     Cooperating Inmate 1[4] (CI-1) told law enforcement ███████████████████████ ███ that NESMITH delivered packages of K2, Suboxone, tobacco, and cell phones to his cell for CI-1 to deliver to inmates who were members of the Bloods gang. CI-1 stated that the inmates would pay NESMITH in Green Dot and they would send other sanctioned inmate Blood gang members to spend time with NESMITH. As described above, your affiant knows that Green Dot Money Pak cards are common forms of payment for contraband inside prisons.

SW09-0049

19 - 13 54 JMC       19 - 13 61 JMC

71.    CI-1 also told law enforcement that NESMITH grabbed CI-1's genitals and told CI-1 that he wanted to perform oral sex on him. NESMITH later told another inmate in front of CI-1 that he wanted to "get with" his "homeboy" and in exchange NESMITH would bring drugs and cell phones into the facility. ████████████████████████████████████████

████████████████████████████████████████████████ Your affiant believes that when NESMITH stated he wanted to "get with" CI-1, he was referring to having sexual relations with the inmate and that he would smuggle contraband into the facility in exchange for sexual acts. CI-1 submitted a Prison Rape Elimination Act (PREA) complaint against NESMITH that described the incident.

72.    Cooperating Inmate 2[5] (CI-2) told law enforcement ██████████████████ ███ that NESMITH delivered packages of contraband to an inmate ██████████████████

████████████████████████████████████████████████████████████████ and would have K2, Suboxone strips, and tobacco for sale after the meeting. CI-2 purchased Suboxone strips from the inmate. That same inmate once told CI-2 that he was waiting on the "Lieutenant" and bragged that he would pay $1,000 to have a package of contraband smuggled in.

73.    CI-2 saw a second inmate walk away with NESMITH and when he returned he would have K2, Suboxone strips, and tobacco for sale. The inmate asked CI-2 to go in on a package with him and that the package would cost CI-2 $500 to smuggle in. CI-2 believed the inmate was going to have NESMITH smuggle the contraband into the facility for the bribe payment.

---

████████████████████████████████████████████████████████████████

SW09-0050

19-13 5 4 JMC       —   19 - 13 6 1 JMC

## 2. NESMITH engaged in inappropriate contact with an inmate

74.     Cooperating Inmate 3[6] (CI-3) told law enforcement prior to testifying in the Grand

▮▮▮ that he went into NESMITH's office and NESMITH told CI-3 that he "liked" him and that if

CI-3 would "show it" to him and let him "taste it" he would smuggle tobacco into the facility for

CI-3. CI-3 declined NESMITH's offer, but NESMITH continued to regularly remind CI-3 by

telling him "don't forget what I said."

75. ████████████████████████████████████████

████████████████████████████████████████████

NESMITH kept telling the other COs to get supplies so he could be alone in the cell with CI-3.

NESMITH propped the cell door shut and attempted to touch CI-3, but CI-3 kept pushing him

away. Later, CI-3 was in the Lieutenant's office with NESMITH when NESMITH put his hands

down CI-3's pants, grabbed CI-3's penis, and performed oral sex on CI-3. CI-3 got away from

NESMITH and NESMITH told CI-3 that he would tell everyone that CI-3 assaulted him if CI-3

told anyone about the incident which would not allow CI-3 to be paroled. NESMITH later entered

CI-3's cell and took photos of CI-3 with his shirt off at MCIJ. CI-3 told investigators that

NESMITH said he was taking the picture to "have something of him" when he was at "home."

76.     Your affiant believes that NESMITH offered to smuggle contraband into MCIJ for

CI-3 in exchange for sexual favors. Your affiant also believes that NESMITH took the photos of

CI-3 as memento of CI-3 and likely still has those photos in his possession.

SW09-0051

19-1354 JMC     19-1361 JMC

### 3. Items expected to be located at 5604 McCormick Ave, Baltimore, MD 21206

77.     Your affiant believes law enforcement will find inmate letters, photos of inmates, financial account documents, money order receipts, and cellular telephones used to coordinate contraband smuggling at the residence. Your affiant knows that electronic payment companies, like PayPal, often send documents to residences and your affiant believes those documents are likely to be at this residence.

### H. 1703 N Warwick Ave, Baltimore, MD 21216 – Residence of Robert DOGGETT

78.     The residence is listed in Maryland Real Property search as owned by DOGGETT. On February 21, 2019, law enforcement conducted surveillance on 1703 N Warwick Avenue, Baltimore, MD 21216. A vehicle registered to DOGGETT was located in the vicinity of the residence.

79.     The residence is located in a group of four brick two story structures with basements. There are stairs that lead up to a porch and to a red front door. The red front door is located to the right of the structure and has 1703 in black lettering on a gold background located on the bottom of the door. There is a window on the street level of the structure, one on the same level as the front door, and three windows on the second floor bump out.

### 1. DOGGETT smuggled tobacco into MCIJ

80.

36

SW09-0052

19 - 13 5 4 JMC  —  19 - 13 6 1 JMC



**2.  DOGGET received payment through PayPal and Western Union**

82.  Your affiant has reviewed subpoena returns from Western Union.  A Robert DUGGETT, with the same home address as DOGGET, received a $100 Western Union from a coconspirator.  Your affiant believes that DUGGETT was a typo and should have been DOGGETT.  Your affiant also believes that DOGGETT received the Western Union as payment for smuggling tobacco into MCIJ.

83.  Your affiant has also reviewed subpoena returns from PayPal and the State Employee Credit Union (SECU).  A PayPal account registered to Benny King received payments from a coconspirator and had over $2,500 of PayPal My Cash deposits into the account.  The PayPal account had check withdrawals into a SECU account belonging to DOGGETT.  Your affiant believes that, during the period subpoenaed, the PayPal account registered to Benny King had only one transaction that was not related to contraband smuggling and all of the proceeds were deposited directly into the bank account of DOGGETT.

84.  Your affiant believes that DOGGETT received payments for smuggling tobacco into MCIJ from coconspirators that were deposited into a PayPal account belonging to Benny King to hide that the transactions were related to contraband smuggling at MCIJ.

**3.  Items expected to be located at 1703 N Warwick Ave, Baltimore, MD 21216**

37

SW09-0053

19 - 1 3 5 4 JMC   ___   19 - 1 3 6 1 JMC

85.     Your affiant believes law enforcement will find financial account documents, money order receipts, and cellular telephones used to coordinate contraband smuggling at the residence.  Your affiant knows that electronic payment companies, like PayPal, often send documents to residences and your affiant believes those documents are likely to be at this residence.

## CONCLUSION

86.     Based upon the foregoing, I respectfully submit that there is probable cause to believe that there will be found in the respective Subject Premises the items set forth in Attachment B, all of which constitute evidence, fruits, and instrumentalities of, inter alia, violations of the Target Offenses.

Therefore, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for each of the Subject Premises and authorize the search and seizure of the items described in Attachment A.

Respectfully submitted,

Joseph Perrino
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on April __, 2019

Honorable J. Mark Coulson
United States Magistrate Judge

38

SW09-0054

19 - 1 3 5 4 JMC

## Attachment A-1

## DESCRIPTION OF THE SUBJECT LOCATION

The residence of Tyirisha JOHNSON, Aldon ALSTON, and Ashley ALSTON is located at **2725 Gwynns Falls Parkway Baltimore, MD 21216**. The address is a set of two story brick row homes. 2725 is second from the end on the right if you are facing the unit. The front door also has a metal storm door with an awning over top. There is a window to the right of the door with a sail boat type decoration in the window. There is a small window to the right of the window and three smaller windows on the second floor. The rear of the residence is accessed by an alleyway. Each unit has two parking spots to the rear of their residence. The rear of 2725 has a door leading out from the residence that has another striped metal storm door.

SW09-0055

19 - 1 3 5 5 JMC

## ATTACHMENT A-2

### DESCRIPTION OF THE SUBJECT LOCATION

The residence of Jamia LAWSON is located at **2524 North Ellamont Street, Main Floor, Baltimore, MD 21216**. The residence is a two story duplex building, attached to the residence to the north, with a small alley between it and the single family residence to the south. The residence has steps leading up to a covered front porch, with brick siding and a white door offset to the north of the building, there are two windows between the steps and the front door. There are three windows on the second floor of the residence facing east. There is a rear door that leads to an alley, between rows of houses, to the west of the residence. The residence number is displayed above the front door. The residence is divided into an upper, middle, and lower apartment and LAWSON resides on the Main Floor and has a door that is directly to the left when you enter the building through the front door of the building.

40

SW09-0056

19 - 1 3 5 6 JMC

## ATTACHMENT A-3

## DESCRIPTION OF THE SUBJECT LOCATION

The residence of Janel GRIFFIN is located at **4940 Carmine Avenue, Baltimore, MD 21207.** The residence is located within a set of townhouses. It is made up of red brick on the lower level and white siding on the upper level. The door is to the left of the lower level and is adjacent to the door to the neighbor's house, to the left. The numbers 4940 are in white lettering to the right of the door.

41

SW09-0057

19 - 1 3 5 7 JMC

## ATTACHMENT A-4

## DESCRIPTION OF THE SUBJECT LOCATION

The residence of Patricia MCDANIEL is located at **5263 Saint Charles Ave, Baltimore, MD 21215.** The residence is a two story single family home with off white siding that encompasses the home and windows are surrounded by white trim. It is located on the corner of Saint Charles Ave and an alley that runs alongside the residence. The front door is off center on the left of the home. There is a small staircase leading up to the front door. There is a small front porch to the right of the front door. A large window is on the first floor and two small windows are seen on the top floor. The house number is present on the front door. The back yard is fenced in. There is a rear door to the house. It is a corner unit.

SW09-0058

19 - 1 3 5 8 JMC

## ATTACHMENT A-5

## DESCRIPTION OF THE SUBJECT LOCATION

The residence of Lakeah PENDLETON is located at **40 Badger Gate Court, Catonsville, MD 21228**. The residence is located in a multi-unit red brick structure. The front door is offset on the right side of the building and is framed with off white molding. The number 40 is located on the right side of the door in black lettering. There are two windows to the left of the door and two upstairs window visible from the street.

SW09-0059

19 - 1 3 5 9 JMC

## ATTACHMENT A-6

## DESCRIPTION OF THE SUBJECT LOCATION

The residence of India PARKER is located at **14 Neptune Ct, Parkville, MD 21234**. The residence is located within a multi-unit brick structure. There are two sets of doors for each grouping of residences. 14 Neptune Ct, Parkville, MD 21234 is the green door of the grouping with the number 14 in white lettering above the door. There is a window located directly to the right of the door with white shutters.

44

SW09-0060

## ATTACHMENT A-7

19-1360 JMC

## DESCRIPTION OF THE SUBJECT LOCATION

The residence of Owen NESMITH is located at **5604 McCormick Ave, Baltimore, MD 21206**. The residence is a two story single family home with a basement that has a glass door that leads to the backyard. The front door is located in the middle of the structure and has a white storm door. There is a driveway on the left side of the structure that leads to a walk way and the front door. There are three windows on the second floor and three windows on the bottom floor that are visible from the street.

45

SW09-0061

19 - 1 3 6 1 JMC

## ATTACHMENT A-8

## DESCRIPTION OF THE SUBJECT LOCATION

The residence of Robert DOGGETT is located at **1703 N Warwick Ave, Baltimore, MD 21216.** The residence is located in a group of four brick two story structures with basements. There are stairs that lead up to a porch and to a red front door. The red front door is located to the right of the structure and has 1703 in black lettering on a gold background located on the bottom of the door. There is a window on the street level of the structure, one on the same level as the front door, and three windows on the second floor bump out.

SW09-0062

19 - 1 3 6 1 JMC

## ATTACHMENT B

### ITEMS TO BE SEIZED

1. Records of narcotics, money laundering, and racketeering conspiracy transactions including, but not limited to, books, ledgers, receipts, notes, and other papers relating to the manufacture, transportation, possession, and distribution of controlled substances;

2. Financial instruments and records and other records or documents relating to narcotics-trafficking activity or the disposition of narcotics proceeds, including, but not limited to, currency, bank checks, cashier's checks, Western Union receipts, money orders, stocks, bonds, precious metals, Green Dot and Money Pack receipts and records, Pay Pal My cash cards receipts and records, and real estate records;

3. Records that identify other co-conspirators, including, but not limited to: address books, telephone books; rolodexes, telephones, pagers, or personal digital assistants with stored telephone information, notes reflecting telephone and pager numbers, photographs [to include still photos, negatives, movies, slides, video tapes, and undeveloped film], and audiotape recordings of conversations, including those made over telephone answering machines;

4. Cellular telephones, pagers, and records and receipts reflecting their ownership and use;

5. Computers with stored financial, telephone, or other information, including the following:

   a. Computers; central processing units; external and internal drives' external and internal storage or transmission equipment or media; terminals or video display units; optical scanners; computer software; computerized data storage devices, including data stored on hard disks [including CD ROMs] or floppy disks, computer printouts or computer programs; computer or data processing software or data, including; hard disks [including CD ROMs], floppy disks, together with peripheral equipment such as keyboards, printers, modems or acoustic couplers, infrared transmitters, and magnetic tapes which could contain or be used to transmit or store any of the foregoing records, documents, and materials;

   b. Records, documents, and materials with refer, relate to, or are for use in connection with the SUBJECT PREMISES. As used herein, the term "records, documents, and materials" includes records, documents, and materials created, modified or stored in electronic or magnetic form and any data, image or information that is capable of being read or interpreted by a computer; and

   c. Records, letters papers, notes, e-mail, and other documents and information, including records, files, and data- in whatever format, including digital- inside the SUBJECT PREMISES or stored on any computer system inside the SUBJECT PREMISES, that may assist in identifying the person or persons who use any computer found within the SUBJECT PREMISES.

47

SW09-0063

19-1354 JMC          ~ 19-1361 JMC

6. Documents or other records relating to state court proceedings involving other co-conspirators, including ,but not limited to, charging documents and bail records;

7. Identification documents;

8. Records of travel including, but not limited to, tickets, transportation schedules, passports, notes and receipts related to travel, and hotel/motel receipts

9. Indicia of occupancy, residence and/or ownership of the premises, including keys, photographs, or documents;

10. United States currency, precious metals, jewelry and financial instruments, stocks and bonds;

11. Safes, combination or key-lock strong boxes or other secure storage containers, suitcases, locked cabinets and other types of locked or closed containers, and hidden compartments that may contain any of the foregoing.

SW09-0064